IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**XAVIER RIVERA-GARCÍA**,

   Plaintiff,

   v.

**FRANKLYN ROMÁN-CARRERO**, *et al.*,

   Defendants.

Civil No. 11-1400 (BJM)

## OPINION AND ORDER

Xavier Rivera-García sued several officers of the Puerto Rico Police Department in their personal and official capacities, together with their spouses and conjugal partnerships: Franklyn Román-Carrero, Eduardo Román-Rosado, Modesto Alameda-Cordero, Samuel Sosa-Vega, and other unnamed officers. Rivera-García alleges that the officers used excessive force against him during a 2010 raid on the La Meseta housing project, and wrongfully pressed charges against him in Commonwealth court. He argues that this deprived him of federally-protected rights, entitling him to recover damages under 42 U.S.C. § 1983. He also seeks relief under Puerto Rico tort and constitutional law. (Docket No. 1, hereinafter "Compl.").

Before the court are motions for summary judgment by Sosa-Vega (Docket No. 65) and by Román-Carrero and Alameda-Cordero (Docket No. 73).[1] Rivera-García opposed the motions. (Docket No. 87). Sosa-Vega replied. (Docket No. 98). This case is before me by the parties' consent. (Docket No. 17). For the reasons that follow, the motions are **granted in part.**

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] Román-Rosado was served by publication but has failed to appear or answer. Accordingly, I have directed an entry of default against him. (Docket No. 111).

R. Civ. P. 56(a).  A fact is material only if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1).  Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  However, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," Leary, 58 F.3d at 751, and an evaluating court may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." Greenburg v. P.R. Maritime Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987).  Nonetheless, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of the case are summarized here after applying Local Rule 56, which structures the presentation of proof at summary judgment.[2] Importantly, no movant rebutted Rivera-García's separate statement of additional facts under Local Rule 56(c). (See Docket No. 90, hereinafter "Pl. St."). Sosa-Vega filed a "Reply Statement of Material Facts Pursuant to Local Civil Rule 56(d)," but devoted the entire missive to refuting Rivera-García's response to Sosa-Vega's original statement of facts, without addressing Rivera-García's own statement. (See Docket No. 98-1). To the extent Rivera-García's statement is supported by citations to record evidence, it is **deemed admitted** under Local Rule 56(e). See Mariani-Colón, 511 F.3d at 219.

*The La Meseta Raid*

On April 30, 2010, at around 6:30 p.m., Puerto Rico police raided the La Meseta housing project in Arecibo. (Docket No. 66, hereinafter "Sosa-Vega St.," ¶ 4; Docket No. 75, hereinafter "Román/Alameda St.," ¶ 2). The operation fell under a work plan targeting drug crimes in the area, and targeted a drug point in the project. (Sosa-Vega St., ¶¶ 6-7; Román/Alameda St., ¶ 3). Defendant Román-Carrero was the supervisor who issued the work plan. (Sosa-Vega St., ¶ 7).

---

[2] The rule "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008), and prevents parties from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007). The penalty for noncompliance is severe: "If the party opposing summary judgment fails to comply with Local Rule 56(c), the rule permits the district court to treat the moving party's statement of facts as uncontested." Id. Thus, litigants ignore the rule "at their peril." Id.

A motion for summary judgment must be supported by "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b). The opposing party must admit, deny, or qualify the moving party's facts by reference to each numbered paragraph, and may make a separately numbered statement of material facts. Local Rule 56(c). The moving party may reply and admit, deny, or qualify the opponent's newly-stated facts, again in a separate statement and by reference to each numbered paragraph. Local Rule 56(d). Any facts supported by citation to record evidence and not controverted in accordance with the rule are deemed admitted. Local Rule 56(e).

Sosa-Vega witnessed the seizure of crack cocaine and marijuana there.[3] (Sosa-Vega St., ¶ 4; Román/Alameda St., ¶ 4).

Rivera-García was then a resident of La Meseta. (Román/Alameda St., ¶¶ 2, 5; Pl. St., ¶ 1). About half an hour before the raid, Rivera-García went to visit his mother, who lived in another apartment at La Meseta. (Pl. St., ¶ 1; Sosa-Vega St., ¶ 9). While there, Rivera-García noticed a commotion outside, and saw his nephew being detained.[4] (Pl. St., ¶¶ 2-3; Román/Alameda St., ¶ 6; see Sosa-Vega St., ¶ 8). Rivera-García's nephew was not restrained, handcuffed, taken away, or harmed. (Sosa-Vega St., ¶ 15; Román/Alameda St., ¶ 11). From Rivera-García's vantage point on the building's second story landing, he could not hear what the officers were saying. (Román/Alameda St., ¶ 7). He did not recognize them as police officers because they were dressed in civilian clothes, and at some point thought they could have been other residents of La Meseta. (Román/Alameda St., ¶¶ 9, 12).

Rivera-García went to where his nephew was. (Pl. St., ¶ 6; Román/Alameda St., ¶ 10). No officers prevented him from approaching the area. (Román/Alameda St., ¶ 14). However, the officers were moving around searching the area, and were questioning his nephew and other young people. (Román/Alameda St., ¶¶ 18-19). When he approached and asked whether he could take his nephew away, officers told him no. (Román/Alameda St., ¶ 15). The defendants characterize this approach as "violat[ing] the perimeter area that the police officers had established around the youth." (Sosa-Vega St., ¶ 11; see Román/Alameda St., ¶¶ 15, 18).

---

[3] Sosa-Vega's statement of facts goes on to discuss Rivera-García's 2003 guilty plea to a drug crime. (See Sosa-Vega St., ¶ 5). Rivera-García objects that it is inadmissible to prove propensity, see Fed. R. Evid. 404(b)(1), while Sosa-Vega asserts it is admissible to show his "knowledge" of drug distribution, see R. 404(b)(2). (See Docket No. 88, ¶ 5; Docket No. 98-1, ¶ 5). Without prejudice to the introduction or exclusion of this evidence at trial, I find the entire question is irrelevant here, as Rivera-García's "knowledge of drug distribution" is not material to any of the articulated grounds for summary judgment.

[4] Sosa-Vega asserts that officers "intervened" with Rivera-García's nephew and other young people because they were near a drug point. (Sosa-Vega St., ¶ 8). Rivera-García contends that his nephew was not at a drug point. (Docket No. 88, ¶ 8). This is immaterial to any defendant's stated grounds for summary judgment, so I have ignored this dispute.

However, Rivera-García did not personally believe he had crossed any "perimeter." (Román/Alameda St., ¶¶ 13-14). They stopped him once he was nearby; according to a memorandum Román-Carrero later wrote, Rivera-García "wanted to take [his nephew] out of there by force," and then "assaulted" Román-Rosado and Alameda-Cordero.[5] (Sosa-Vega St., ¶ 12). The officers arrested Rivera-García. (Sosa-Vega St., ¶ 13). Román-Rosado, Alameda-Cordero, and Sosa-Vega, along with other unknown officers, threw Rivera-García to the ground and kicked him. They handcuffed him and kicked him again before placing him in the back of an unmarked vehicle, and later moved him to a police truck. (Pl. St., ¶ 7). Rivera-García asserts that Román-Carrero was present at the time and, in some unspecified manner, "encouraged" the officers. (Pl. St., ¶ 8).[6] Jimmy Arocho, an unrelated person who recorded the incident, reviewed a video at his deposition and testified that it shows an officer in a red shirt punching Rivera-García, and an officer in a green shirt grabbing Rivera-García's face. (Román/Alameda St., ¶¶ 25-26).[7]

*Detention and Prosecution*

Rivera-García was kept in a holding cell until 3:00 a.m. before being given a summons and released. (Pl. St., ¶ 9). Two charging documents were filed on May 5, 2010 alleging that Rivera-García struck Román-Rosado and Alameda-Cordero; Román-Carrero was the complaining witness for each, and the named defendants were listed as witnesses. (Pl. St., ¶ 10;

---

[5] Sosa-Vega's proposed statement was that Rivera-García "disobeyed the orders given by the police officers around the youth, which [*sic*] told Plaintiff not to intervene with the scene." (See Sosa-Vega St., ¶ 12). Reviewing the evidence he cites, I find no support for the proposition that Rivera-García "disobeyed" any orders, or was told not to "intervene with the scene."

[6] Rivera-García offers his account in answers to Sosa-Vega's interrogatories, which he made under penalty of perjury. (See Docket No. 88-1). After careful consideration, I have disregarded the video Rivera-García submitted in opposition to summary judgment. Rivera-García's statement of facts does not identify what points in the video support his contentions about what it shows, and therefore failed to cite specific portions of the record. See Local Rule 56(e). It is therefore not necessary to rule on Sosa-Vega's objection that the video has not been authenticated. (See Docket No. 98, p. 8).

[7] Notwithstanding my decision not to consider the video itself, Román-Carrero and Alameda-Cordero highlighted this testimony about its contents, and Rivera-García admitted it as undisputed. (See Docket No. 89, ¶¶ 25-26).

Sosa-Vega St., ¶¶ 16-17; Román/Alameda St., ¶ 20). As drafted, they alleged two counts of using violence or intimidation against public authorities, a fourth degree felony under Article 251 of the Penal Code of 2004, 33 L.P.R.A. § 4879 (2010). (Docket No. 84-3). The presiding magistrate found probable cause for two counts of resisting or obstructing public authorities, each a misdemeanor under Penal Code art. 252, 33 L.P.R.A. § 4880. (Sosa-Vega St., ¶ 18). However, the prosecution voluntarily dismissed the charges. (Pl. St., ¶ 12).

*Knowledge of the Officers' Identities*

Rivera-García did not know who any of the officers were at the time of the raid. (Sosa-Vega St., ¶ 10; Román/Alameda St., ¶ 16). However, he remembers Sosa-Vega because "the name of the person who spoke to me first was the one who started all this mess and stayed with me until 6:00 in the morning, when I left the hospital," and because Sosa-Vega was the officer he "spoke with asking about [his] nephew." (Román/Alameda St., ¶¶ 16-17; Docket No. 75-3, p. 140-142). He learned the other defendants' names from seeing them on the charging documents against him. (Román/Alameda St., ¶ 17). Jimmy Arocho testified that he could not name any of the officers appearing in his video. (Román/Alameda St., ¶¶ 22-24).

*Procedural History*

Rivera-García sued on April 27, 2011. (Compl.). He asserts that the defendants violated his Fourth and Fourteenth Amendment rights.[8] (Id., ¶¶ 31-33). He also claims that their actions "constitute[d] reckless disregard for a person's health and safety, negligence in the performance of their duties, [and] malicious and negligent behavior against a law abiding citizen, all in

---

[8] The complaint also mentions the Fifth and Thirteenth Amendments in passing. However, defendants correctly observe that the Fifth Amendment addresses action by federal officers, while the Thirteenth Amendment prohibits slavery and involuntary servitude; neither Amendment is implicated by Rivera-García's version of the facts. "A plaintiff may not simply throw a [constitutional] reference into a complaint hoping to later flesh out its claim with facts in support"; here, Rivera-García has not even done that. See also Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 88 (1st Cir. 2008).

violation of Article II, Sections 1, 7 and 10 of the Constitution of the Commonwealth of Puerto Rico, 1 L.P.R.A. §§ 10 and 11, and Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141 and 5142." (Id., ¶ 34). Rivera-García seeks damages for "physical pain and mental anguish" from "the injuries inflicted by the defendants," "mental anguish" from "the malicious and frivolous filing of felony charges by the defendants," compensation for his medical costs and criminal defense expenses, and punitive damages. (Id., ¶¶ 35-38)

## DISCUSSION

Rivera-García's complaint wholly fails to articulate what moments in his factual narrative constitute completed violations of specific constitutional rights. But while "summary judgment is not a procedural second chance to flesh out inadequate pleadings," see Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir. 1990), the parties generally seem to agree that Rivera-García's federal claims break down into three violations: (1) that the use of force against him at the scene violated the Fourth Amendment, and (2) that officers lacked probable cause to arrest him, violating the Fourth Amendment, and (3) that officers maliciously pressed charges in Commonwealth court, also violating the Fourth Amendment. The moving defendants all argue that none of the episodes present a federal constitutional violation, and that the court should decline jurisdiction over the remaining claims under Puerto Rico law.[9] Román-Carrero and Alameda-Cordero also contend that the Eleventh Amendment bars official-capacity claims for damages. I begin by addressing each alleged constitutional violation, then turn to the Eleventh Amendment question, and conclude by addressing the claims under Puerto Rico law.

---

[9] They also argue Rivera-García has not established any Fourteenth Amendment due process claims. (Docket No. 65, p. 16-19; Docket No. 74, p. 20-21). Because Rivera-García did not respond to these contentions, he has waived his objections to their dismissal, and defendants are entitled to summary judgment on those claims.

I.      **Fourth Amendment Excessive Force Claims**

Rivera-García argues he was deprived of a federal right by officers' use of force against him. Claims of excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" are generally analyzed as Fourth Amendment seizures of the person. Graham v. Connor, 490 U.S. 386, 394-95 (1989). Police officers' use of force violates the Fourth Amendment when their actions were not "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. In particular, three factors inform this inquiry: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Isom v. Town of Warren, 360 F.3d 7, 11 (1st Cir. 2004). Additionally, reviewing courts "must make allowance for the need of police officers 'to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" Berube v. Conley, 506 F.3d 79, 83 (1st Cir. 2007) (quoting Graham, 490 U.S. at 396-97). Thus, a court does not only scrutinize the point in time that force was used; rather, "once it has been established that a seizure has occurred, the court should examine the actions of the government officials leading up to the seizure." St. Hilaire v. Laconia, 71 F.3d 20, 26 (1st Cir. 1995) (citing Brower v. Inyo, 489 U.S. 593 (1989)).

Román-Carrero and Alameda-Cordero assert that they are not liable under this standard because they were merely supervisors, and that there is no evidence they personally aided or approved of the use of force against Rivera-García. (Docket No. 74, p. 9-14). Sosa-Vega contends that the Fourth Amendment does *not* govern Rivera-García's claims, and that in any case legal uncertainty over the applicable standard should entitle him to qualified immunity. I discuss each position separately.

**A.     Román-Carrero and Alameda-Cordero**

Any person who deprives another of a federally protected right "under color of" state law may be held personally liable for damages. See 42 U.S.C. § 1983. But an individual's office, standing alone, does not make him or her personally liable for the conduct of other government agents. Ayala-Rodríguez v. Rullán, 511 F.3d 232, 236 (1st Cir. 2007). Rather, a plaintiff must "establish that her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 768 (1st Cir. 2010). Put differently, a plaintiff must be able to establish "that the supervisor's conduct (whether action or inaction) constitutes supervisory encouragement, condonation or acquiescence, or gross negligence of the supervisor amounting to deliberate indifference." Grajales v. P.R. Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012) (citation and quotation marks omitted). This necessarily means that a supervisor must have "some kind of notice of the alleged violations . . . ." Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986)).

Román-Carrero and Alameda-Cordero contend there is no evidence that they personally engaged in or condoned any of the allegedly excessive use of force, highlighting Rivera-García's deposition testimony that even though he recalls Sosa-Vega's name from the course of the incident, he only named the others as defendants because they were listed on the charging documents filed against him. (Docket No. 74, p. 9-10, 11, 13, 14). Yet this reasoning overlooks rational inferences in Rivera-García's favor, which must be assumed at summary judgment. In the charges, Román-Carrero swore to the Commonwealth magistrate that:

> [W]hile the officers were intervening with the nephew of the accused, the latter said that he was going to take his nephew with him regardless of whom gets in the way, he stretched his arms toward his sides and hit Off. Alameda on his right shoulder, and when trying to put him under arrest he resisted the arrest.

(Docket No. 84-3, p. 2). Viewed in the light most favorable to Rivera-García, a rational jury may infer that Alameda-Cordero, and not merely any other one of the officers executing the La Meseta raid, was "trying to put him under arrest" while he "resisted." Moreover, Román-Carrero swore the charges were based on personal knowledge, and listed himself and Alameda-Cordero (as well as Sosa-Vega and Román-Romero) as witnesses to the alleged offense. Taken together, these facts place Román-Carrero and Alameda-Cordero at the scene of Rivera-García's arrest. That, in turn, makes Rivera-García's sworn assertions of Alameda-Cordero's violence and Román-Carrero's encouragement colorable, rather than merely speculative or conclusory. (See Pl. St., ¶ 7; Docket No. 88-1, ans. 5).

In short, while the record evidence is razor-thin, the inferences that may be drawn from it nonetheless preserve a triable question as to whether Alameda-Cordero and Román-Carrero may be found to have participated in, encouraged, or acquiesced to the alleged use of excessive force against Rivera-García. Accordingly, they are not entitled to summary judgment on these claims.

### B.   Sosa-Vega

Sosa-Vega does not substantially dispute Rivera-García's version of the facts, but asserts that (1) there was no Fourth Amendment violation because the seizure of Rivera-García's person was already completed before the alleged use of force, and (2) legal uncertainty over the applicable standard entitles him to qualified immunity. I consider each point in turn.

#### 1.   *Applicability of Fourth Amendment Rights*

Sosa-Vega offers a two-part argument for dismissing the excessive force claims against him. First, he focuses on Rivera-García's testimony that he felt officers used excessive force because he "was already facing down, handcuffed and neutralized when the officer assaulted me on the floor or battered me on the floor." (See Docket No. 75-3, p. 189:17-19). From this, he surmises that Rivera-García's legal claim "is limited to the time period after his arrest by the

officers – after Plaintiff had been seized or had his movement restrained . . . ." (Docket No. 65, p. 9).  Second, he explores a circuit split over what constitutional standard governs the use of force against individuals in post-arrest, pre-arraignment custody, a so-called "legal twilight zone."  (Docket No. 65, p. 10-11); see Moreau v. Gerardi, Civil No. 08-40117-FDS, 2010 U.S. Dist. LEXIS 124613 at **19-34 (D. Mass. Nov. 24, 2010) (surveying cases).  Since Rivera-García purportedly claims post-arrest, pre-arraignment mistreatment, Sosa-Vega concludes that only the Fourteenth Amendment right to due process applies, and that his Fourth Amendment claims fail.  (Docket No. 65, p. 11).

Both parts of this argument are too clever by half.  First, notwithstanding Rivera-García's off-the-cuff testimony about what "excessive force" subjectively means to him, neither the complaint nor the summary judgment papers draw any distinction between claims for use of force before versus after the instant in time Rivera-García considered himself "neutralized."  He complains that he was thrown to the ground, *then* kicked, *then* cuffed, and *then* kicked again. (Compl., ¶¶ 23-24; Pl. St., ¶ 7).  On this nonmovant-friendly view of the facts, giving Sosa-Vega's legal analysis its full weight would only cut off Fourth Amendment liability at the conceptual moment his seizure was complete, leaving other claims for trial.

Yet even that rule would not dispose of the balance of Rivera-García's excessive force case.  True, the Supreme Court pronounced in *Graham* that it had "not resolved the question [of] whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins . . . ."  490 U.S. at 395 n.10.  And Sosa-Vega correctly notes at least three circuits holding that only a Fourteenth Amendment due process right prohibits excessive force after the time of arrest.  (Docket No. 65, p. 11) (citing Cottrell v. Caldwell, 85 F.3d 1480 (11th

Cir. 1996) (arrestee who died of "positional asphyxiation" in police cruiser had right to Fourteenth Amendment due process, not Eighth Amendment freedom from cruel punishment); Brothers v. Klevenhagen, 28 F.3d 452 (5th Cir. 1994) (decedent shot while attempting to escape county jail was "pretrial detainee" with right to Fourteenth Amendment due process, not Fourth Amendment freedom from unreasonable seizure); and Wilkins v. May, 872 F.2d 190 (7th Cir. 1989) (plaintiff at the stationhouse confessing at gunpoint lost right to Fourteenth Amendment due process, not Fourth Amendment freedom from unreasonable seizure)). But prior to that "point at which arrest ends and pretrial detention begins," the Supreme Court's holding is clear: the Fourth Amendment protects "free citizen[s]" from excessive force "*in the course of* an arrest, investigatory stop, or other 'seizure.'" Graham, 490 U.S. at 395 & n.10 (emphasis added).

Sosa-Vega's argument therefore must turn on the proposition that Rivera-García became a "pretrial detainee" before his claims arose. (See Docket No. 65, p. 10). That would be a colorable legal conclusion if Rivera-García were complaining of his treatment at the stationhouse as in *Wilkins* and *Brothers*, or perhaps even in the police cruiser as in *Cottrell*. But here, he complains of abuse before he was even moved from the spot he was handcuffed. (See Pl. St., ¶ 7). Whatever hairs might be split over doctrinal labels, it is hard to conceive of a justification for *why* the mere attachment of handcuffs at the scene alters the standard measuring an officer's use of force, particularly when the arrestee has not been significantly moved and essentially no time has passed. Indeed, *Graham*'s language itself reflects a common-sense understanding that the Fourth Amendment applies "in the course of an arrest," not some more technical span of time such as 'preceding the neutralization of an arrestee.' See also 490 U.S. at 395. Accord Moreau, 2010 U.S. Dist. LEXIS 124613 at **28-31 (applying Fourth Amendment standard to plaintiff

allegedly beaten in police holding cell because "[r]equiring one plaintiff to meet a higher standard of proof than another elevates doctrine over fairness and common sense.").

There is undoubtedly a point where the "free citizen" becomes a "pretrial detainee" and *Graham* ceases to control, and the Court expressly decided not to decide what constitutional guarantees apply at that time. But Sosa-Vega never shows why the point converting Rivera-García into a "pretrial detainee" occurred when he says it did, and his assumption is not rooted in any doctrinal grounds. For that reason, I proceed to his argument for qualified immunity.

### 2. *Qualified Immunity and "Clearly Established" Rights*

Sosa-Vega asserts that even if the Fourth Amendment properly applies, he is entitled to qualified immunity. An individual is immune from a section 1983 suit for damages if either (1) the plaintiff fails to state a violation of a constitutional right, or (2) any such right was not "clearly established" when the alleged violation occurred. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). Whether a right is "clearly established" depends on (a) whether the "law in general" was sufficiently clear at the time of the violation, and (b) "whether a reasonable person in the defendant's shoes would have understood" that he had violated a protected right. Raiche v. Pietroski, 623 F.3d 30, 35-36 (1st Cir. 2010) (quotation marks omitted). In excessive force cases, this means asking (a) "whether materially similar cases or general Fourth Amendment principles gave [the officer] fair warning that [the force used] was unconstitutional," and (b) whether "he was reasonably mistaken as to the degree of force he should have used." See Jennings v. Jones, 499 F.3d 2, 16, 18 (1st Cir. 2007).

Sosa-Vega cites the split in authorities and lack of First Circuit precedent identified in Moreau as proof that the general law protecting detainees from excessive force post-arrest was not clearly established on April 30, 2010, and remains unclear today. (Docket No. 65, p. 25). But even granting that, his immunity claim fails because the clarity of detainees' rights is

irrelevant unless Rivera-García was a detainee at the time of his excessive force claim; as explained above, that proposition is untenable on the record here. Because Sosa-Vega did not present any other grounds for asserting immunity (e.g., challenging whether substantive Fourth Amendment law put him on notice, or that he made a reasonable mistake in the circumstances), he has not met the burden of establishing the defense at summary judgment. Accordingly, Sosa-Vega is not entitled to qualified immunity.[10]

## II.   Fourth Amendment Warrantless Arrest Claims

Rivera-García contends that officers lacked probable cause to arrest him, and therefore deprived him of his Fourth Amendment right to be free from unreasonable seizures. See Iacobucci, 193 F.3d at 21-22 (section 1983 warrantless arrest claim analyzed under Fourth Amendment). Probable cause exists when "the facts and circumstances of which the arresting officer has knowledge would be sufficient to permit a reasonably prudent person to conclude that a crime has been, will be, or is being committed." United States v. Laboy, 909 F.2d 581, 585-86 (1st Cir. 1990) (citing Michigan v. Summers, 452 U.S. 692 (1981); Michigan v. De Fillippo, 443 U.S. 31, 36 (1979)).

The officers defend Rivera-García's arrest on two grounds. First, Sosa-Vega asserts that "the finding of the [Commonwealth] magistrate that probable cause existed" ends any inquiry into the arrest's propriety. (Docket No. 65, p. 12, 16). But he fails to explain *why* that determination precludes this litigation. Full faith and credit must be given to Puerto Rico's judicial proceedings, 28 U.S.C. § 1738, and Puerto Rico law recognizes the doctrine of issue preclusion, but applying that rule requires analyzing several elements and their exceptions, which

---

[10] Qualified immunity is an affirmative defense; because Román-Carrero and Alameda-Cordero did not argue for it, it is not necessary to consider whether they are entitled to it at summary judgment. See also Surprenant v. Rivas, 424 F.3d 5, 14 (1st Cir. 2005) (ruling qualified immunity defense forfeited where not raised by motions below). Moreover, "the scope of the protection afforded by the doctrine of qualified immunity is claim-specific," and no defendant raises it against the other claims; thus, it is not necessary to consider it again. See Iacobucci v. Boulter, 193 F.3d 14, 22 (1st Cir. 1999).

are not always trivial.  See, e.g., Baez-Cruz v. Mun'y of Comerio, 140 F.3d 24, 29-30 (1st Cir. 1998) (analyzing issue preclusion in section 1983 suit).  And since Sosa-Vega bears the burden of showing he is entitled to summary judgment, the court will not act *sua sponte* to find that he has established an affirmative defense.  See Velásquez Rodríguez v. Mun'y of San Juan, 659 F.3d 168, 175 (1st Cir. 2011) ("Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority.").

Román-Carrero and Alameda-Cordero take a different approach, arguing that arresting Rivera-García was objectively reasonable because he "penetrat[ed] an established perimeter" and ignored "specific instructions to leave the perimeter, thereby incurring in various criminal actions."  (Docket No. 74, p. 19).  But this characterization is not supported by the summary judgment record.  For instance, Román-Carrero and Alameda-Cordero never offer evidence that Rivera-García was given "specific instructions to leave."  The closest they get is a portion of his deposition where he said:  "When I [was] very close to [my nephew] . . . I asked what was going on, that he was a minor, *could he leave with me and they said 'no' to me.*" (Docket No. 75-3, p. 137:7-8; see Román/Alameda St., ¶ 15) (emphasis added).  Regardless, even though the moving defendants hint at the offense Rivera-García was charged with, they never attempt to link up specific facts with the elements of that offense, or of any other violation that might compel a finding of probable cause.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

In sum, none of the moving defendants have shown that no rational jury could conclude Rivera-García was arrested without probable cause.  Of course, this is not to say a jury *must* conclude there was no probable cause, or that the Puerto Rico magistrate's finding of probable

cause lacks probative or preclusive force. Nonetheless, no defendant is entitled to summary judgment on the grounds argued here.

### III.　　Fourth Amendment Malicious Prosecution Claims

Rivera-García's final federal claim is that the defendants maliciously filed charges against him. (Docket No. 87, p. 10). For this analysis, I share the parties' assumption that the Fourth Amendment provides a constitutional hook. But see Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010) ("It remains an unanswered question whether a malicious prosecution claim is cognizable under the Fourth Amendment and section 1983 . . . ."); Pacheco Ortiz v. Sanchez Saez, Civil No. 11-1084 (BJM), 2012 U.S. Dist. LEXIS 4774 at **15-16 (D.P.R. Mar. 31, 2012); Hernández-Lopez v. Pereira, 380 F. Supp. 2d 30, 32 (D.P.R. 2005) (citing Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001)). See also Medina v. Toledo, 718 F. Supp. 2d 194, 205-06 & n.7 (D.P.R. 2010) (collecting cases). At common law, the tort of malicious prosecution consists of "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." Nieves, 241 F.3d at 53. To maintain a claim that such conduct violated the Fourth Amendment, a plaintiff must further establish that he suffered a deprivation of liberty "pursuant to legal process," such as under an arrest warrant or criminal charging document. Id. at 54.

Román-Carrero and Alameda-Cordero rest on the same analysis by which they attacked the unreasonable arrest claims, so it is not necessary to review the point again; for the reasons discussed in part II, they are not entitled to summary judgment. On the other hand, Sosa-Vega argues that he did not sign any charging document against Rivera-García, and therefore did not cause the prosecution or any deprivation of rights that it might have effected. (Docket No. 65, p. 16). The uncontested facts support this contention: only Román-Carrero signed the charging

documents, and Sosa-Vega was only listed as a witness. (See Docket No. 86-4). Moreover, Rivera-García offers no competent evidence that Sosa-Vega participated or even acquiesced in Román-Carrero's decision to file the charges. He cites his response to Sosa-Vega's interrogatories, where he rehashes the allegation that Sosa-Vega "proceeded to file felony charges" against him. (Pl. St., ¶ 10; Docket No. 88-1, p. 17). But this narrative does not provide a foundation of personal knowledge for the assertion that Sosa-Vega "proceeded to file" anything at all. Without being based in personal knowledge, the assertion reduces to conclusory speculation, and cannot preserve a triable issue of fact. Therefore, absent any evidence of his personal involvement or supervisory liability, Sosa-Vega is entitled to summary judgment on this claim. See Rodríguez-García, 610 F.3d at 768.

## IV. Eleventh Amendment Immunity

Román-Carrero and Alameda-Cordero argue that the Eleventh Amendment requires dismissal of Rivera-García's claims against them in their official capacity. (Docket No. 74, p. 16). The Eleventh Amendment generally bars claims for money damages against the Puerto Rico government and its officers when sued in their official capacity. Vaquería Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 477-78 (1st Cir. 2009). The complaint alleges that "defendants are being sued both in the individual and official capacities." (Docket No. 1, ¶ 18). However, Rivera-García only replies that his claims "are clearly outside the purview of the Eleventh Amendment . . . as they have been exerted [*sic*] against the defendants in the[ir] personal capacity." (Docket No. 87, p. 13). Because Rivera-García effectively concedes that he may not maintain an official-capacity suit here, the defendants are entitled to summary judgment in their official capacity.

## V. Claims Under Puerto Rico Law

Sosa-Vega's only discussion of the Commonwealth claims asks the court to decline supplemental jurisdiction. But since there are viable federal claims that "form part of the same

case or controversy under Article III of the United States Constitution," there is no occasion to decline jurisdiction on that ground. See 28 U.S.C. § 1367.

Román-Carrero and Alameda-Cordero further assert that "Plaintiff failed to state a cognizable claim under [Article] 1802 . . . ." (Docket No. 74, p. 23). But while they recite the hornbook elements of direct and vicarious tort liability under Puerto Rico law, they never explain *how* Rivera-García's claims fail these standards, nor do they advance any other defense. Moreover, they are silent on whether Rivera-García can maintain an action under the provisions of the Commonwealth constitution he invoked.

Absent any reasoning for why Rivera-García's Puerto Rico claims must fail on the merits, the defendants are not entitled to summary judgment on them. See Zannino, 895 F.2d at 17.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment are **GRANTED IN PART**. The court **DISMISSES** (1) all claims against defendants in their official capacity, (2) all claims under the Fourteenth Amendment against the moving defendants, and (3) the Fourth Amendment malicious prosecution claim against Sosa-Vega. The motions for summary judgment are **DENIED** as to (1) the Fourth Amendment excessive force and unreasonable arrest claims, (2) the Fourth Amendment malicious prosecution claims against Román-Carrero and Alameda-Cordero, and (3) the claims under Puerto Rico law.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of January, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge